J-S77010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALFONZO EXUM | |
| Appellant | No. 2903 EDA 2013 |

Appeal from the Order dated September 29, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000678-2008

BEFORE:  STABILE, JENKINS, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:          **FILED FEBRUARY 09, 2015**

Appellant Alfonzo Exum appeals from the September 29, 2013 order of

the Court of Common Pleas of Philadelphia County, which dismissed without

a hearing his request for collateral relief under the Post Conviction Relief Act

(PCRA), 42 Pa.C.S.A. §§ 9541-46.  Upon review, we affirm.

The facts and procedural history in this case are undisputed.  As we

have previously recounted:

> On April 25, 2007, at approximately 12:45 p.m., Robert
> Fuel (victim) and his girlfriend Michelle Davis arrived at Tim's
> Donut Shop (Shop), located at the intersection of North 40th
> Street and Poplar Street in West Philadelphia.  Ms. Davis walked
> inside the Shop, at which point she saw [Appellant] and his
> cousin, Deshawn Harris, sitting on a window ledge near the
> entrance of the Shop.  Ms. Davis knew the pair from elementary
> school, but they did not greet one another.  The victim walked
> into the Shop behind Ms. Davis.  Immediately after the victim
> walked in the door, [Appellant] moved from the ledge,

---

[*] Retired Senior Judge assigned to the Superior Court.

approached the victim and said "Let me talk to you for a minute." As [Appellant] got up, Mr. Harris left the shop and did not return. Both [Appellant] and the victim turned towards the door, at which point [Appellant] placed his left arm around the victim's left shoulder, pulled a gun out, and shot the victim twice in the head.

The victim fell to the floor, and [Appellant] left the Shop. Five seconds later, [Appellant] came back into the Shop and, from a distance of 15 to 20 feet, shot Ms. Davis three times, twice in the back and once in the side, while looking directly at her the entire time. Before the police arrived, the victim's brother, Howard Fuel, and father, Robert Lewis, arrived at the Shop. Howard Fuel had been walking down Poplar Street near the Shop when the shooting occurred. As he was walking down the street, Howard Fuel heard shots coming from the direction of the Shop. He turned and looked at the Shop and saw [Appellant] run out the door "tucking a gun," then turn and run back inside the Shop. He heard more gunshots, then saw [Appellant] run out of the [Shop] and down the street. The victim was pronounced dead by paramedics at 12:48 p.m.

One bullet, which was determined to be between .40 and .45 caliber, was recovered from the Shop. Two bullets of the same caliber were recovered from the victim. All three bullets were lead, and all three bullets had "knurled cannelure." These are both characteristics that are most commonly seen in revolver bullets. [(The revolver used in this crime was not recovered.)]

Ms. Davis identified [Appellant] as the shooter to both the first officer at the scene and to the 911 operator on a call by the Shop's owner. [Appellant] was arrested on May 23, 2007.

*Commonwealth v. Exum*, No. 3135 EDA 2009, unpublished memorandum

(Pa. Super. filed August 24, 2010) (quoting the trial court's January 11,

2010, opinion) (internal record citations and footnotes omitted).

On May 19, 2009, following a non-jury trial before the [trial court], [Appellant] was convicted of murder of the first degree (H-1), attempted murder (F-1), aggravated assault (F-1), carrying firearms on public streets or public property in Philadelphia (M-1), possessing instruments of crime (PIC) (M-1), and recklessly endangering another person (REAP) (M-2). That same date, [the trial court] sentenced [Appellant] to the mandatory term of life imprisonment. On May 27, 2009, [Appellant] filed post-sentence motions, which [the trial court] denied on September 24, 2009. On October 22, 2009, [Appellant] filed a timely notice of appeal. On August 24, 2010, the Superior Court affirmed [Appellant's] judgment of sentence. On September 14, 2010, [Appellant] filed a petition for allowance of appeal, which our Supreme Court denied on March 9, 2011.

On November 2, 2011, [Appellant] filed a *pro se* petition pursuant to the [PCRA]. Counsel was appointed on March 16, 2012. . . . On August 27, 2013, [the PCRA court] sent [Appellant] a notice pursuant to Pa.R.Crim.P. 907 (907 Notice) of its intent to deny and dismiss his PCRA petition without a hearing. [Appellant] did not respond to [the PCRA court's] 907 Notice; on September 27, 2013, [the PCRA court] dismissed [Appellant's] petition. On October 22, 2013, [Appellant] filed a timely notice of appeal to the Superior Court.

On October 24, 2013, [Appellant] was ordered to file of record and serve on the [PCRA] judge a "Statement of Matters Complained of on Appeal" pursuant to Pa.R.A.P. 1925(b) (1925(b) statement) no later than 21 days after the entry of the order. PCRA counsel failed to comply with [the PCRA court's] order; however, on December 31, 2013, PCRA counsel applied to the Superior Court to remand the appeal to the [PCRA court] in order that he might file a timely 1925(b) statement. On January 21, 2014, the Superior Court remanded this matter to [the PCRA court] for a period of 60 days. The Superior Court directed PCRA counsel to file and serve a 1925(b) statement within 21 days of the date of the order. PCRA counsel again failed to comply within the allotted time. Thereafter, [Appellant] filed a *pro se* request for the appointment of substitute counsel. On March 31, 2014, the Superior Court granted [Appellant's] application for substitute counsel pursuant to **Commonwealth v. McDaniels**, 785 A.2d 120 (Pa. Super. 2001) (remanding a case for the appointment of substitute counsel where the original attorney was either unwilling or unable to competently represent his client).

On April 1, 2014, [the PCRA court] removed PCRA counsel and appointed a new attorney to represent [Appellant]. On May 5, 2014, the Superior Court again remanded this matter to [the PCRA court] for 60 days with instructions to PCRA counsel to file and serve a 1925(b) statement within 21 days.

PCRA Court Opinion, 6/9/14, at 1-3 (internal footnotes omitted). Appellant filed a Pa.R.A.P. 1925(b) statement in which he raised eight assertions of error, namely: (1) trial counsel was ineffective for advising Appellant to waive a jury trial; (2) trial counsel was ineffective for advising and coercing Appellant to testify at trial; (3) trial counsel was ineffective for failing to file and litigate a motion to suppress [Appellant's] statement; (4) trial counsel was ineffective for failing to interview and present as a defense witness

Deshawn Harris at Appellant's trial; (5) trial counsel was ineffective for failing to interview and present as defense witnesses Kalesha and Moesha Doe at Appellant's trial; (6) the Commonwealth failed to provide to Appellant a videotape recording of the incident at the Shop in violation of Appellant's constitutional rights; (7) direct appeal counsel was ineffective for conceding [Appellant's] guilt in the appellate brief; and (8) previous post-conviction counsel was ineffective for failing to raise a claim that his trial and appellate counsels were ineffective for failing to challenge meaningfully the Commonwealth's case at trial or on direct appeal.

The PCRA court filed a 1925(a) opinion, addressing Appellant's claims *seriatim*. With respect to Appellant's first two assertions of error, the PCRA court concluded, based on the oral colloquy, that they lacked arguable merit. The trial court determined Appellant knowingly, intelligently and voluntarily waived his right to a jury trial and that Appellant's statements under oath belied his contention that he was coerced to testify at his trial. With respect to Appellant's third assertion of error, the PCRA court also concluded that it lacked arguable merit. Specifically, the PCRA court reasoned "[Appellant] did not respond to [the PCRA court's] 907 Notice, nor did he specify, in his 1925(b) statement, the basis upon which he claimed that his statement to detectives should have been suppressed." ***Id.*** at 12.

Combining Appellant's fourth and fifth assertions of error, the PCRA court determined the issue lacked merit because Appellant "personally decided not to present any witnesses." ***Id.*** at 13. With regard to

Appellant's sixth assertion of error, the PCRA court determined that Appellant's PCRA counsel "effectively withdr[ew] this claim." *Id.* at 14. Accordingly, the PCRA court concluded "[a]s PCRA counsel conceded that the purported videotape did not contain exculpatory or impeaching evidence favorable to [Appellant], [Appellant] failed to raise a colorable **Brady**[1] claim." *Id.* Finally, with respect to Appellant's last two assertions of error, the PCRA court reasoned that those claims were waived because Appellant asserted them for the first time in his 1925(b) statement.

On appeal,[2] Appellant repeats the same claims.[3] After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the PCRA court's Rule 1925(a) opinion authored by the Honorable M. Teresa Sarmina adequately disposes of Appellant's issues on

---

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

[2] "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (quoting **Commonwealth v. Rainey**, 928 A.2d 215, 223 (Pa. 2007)).

[3] To the extent Appellant argues that his direct appeal counsel was ineffective by conceding Appellant's guilt in the appellate brief or that his former PCRA counsel was ineffective for failing to raise the ineffectiveness of Appellant's trial or direct appeal counsels, such arguments are waived. As the trial court aptly noted, Appellant did not preserve the arguments for appellate review because he failed to raise them below. **See** Pa.R.A.P. 302(a). Appellant's claim of ineffectiveness by PCRA counsel also must fail because he raises it for the first time on appeal. **See** **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*) (citations omitted) (noting that it is well-established that allegations of PCRA counsel's ineffectiveness cannot be brought for the first time on PCRA appeal), **appeal denied**, 101 A.3d 785 (Pa. 2014).

appeal. *See* PCRA Court Opinion, 6/9/14, at 5-14. We, therefore, affirm the PCRA court's order dismissing Appellant's PCRA petition without a hearing. We direct that a copy of the trial court's June 9, 2014 Rule 1925(a) opinion be attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2015

**PHILADELPHIA COURT OF COMMON PLEAS**
**CRIMINAL TRIAL DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH | : | |
| | | **CP-51-CR-0000678-2008** |
| v. | : | **Superior Court Docket No.** |
| | CP-51-CR-0000678-2008 Comm. v. Exum, Alfonzo<br>Opinion | **2903 EDA 2013** |

ALFONZO EXUM



7160202161

Sarmina, J.
June 9, 2014

**FILED**

JUN 0 9 2014

**OPINION**

Criminal Appeals Unit
First Judicial District of PA

**PROCEDURAL HISTORY**

On May 19, 2009, following a non-jury trial[1] before this Court, Alfonzo Exum (hereafter,

petitioner) was convicted of murder of the first degree (H-1), attempted murder (F-1), aggravated

assault (F-1), carrying firearms on public streets or public property in Philadelphia (M-1), possessing

instruments of crime (PIC) (M-1), and recklessly endangering another person (REAP) (M-2).[2] That

same date, this Court sentenced petitioner to the mandatory term[3] of life imprisonment.[4] On May

27, 2009, petitioner filed post-sentence motions, which this Court denied on September 24, 2009.[5]

On October 22, 2009, petitioner filed a timely notice of appeal. On August 24, 2010, the Superior

---

[1] Petitioner was represented by Gregory Pagano, Esquire, at trial.

[2] 18 Pa.C.S. §§ 2502(a), 901(a), 2702(a), 6108, 907(a), and 2705, respectively.

[3] 18 Pa.C.S. § 1102(a)(1).

[4] As to the conviction for attempted murder, this Court sentenced petitioner to a concurrent term of not less than ten years nor more than 30 years imprisonment. As to the conviction for carrying firearms on public streets or public property in Philadelphia, this Court sentenced petitioner to a concurrent term of not less than one year nor more than five years imprisonment. As to the conviction for PIC, this Court sentenced petitioner to a concurrent term of not less than one year nor more than five years imprisonment. Petitioner's convictions for aggravated assault and REAP merged for sentencing purposes. Notes of Testimony (N.T.) 5/19/2009 at 180-81.

[5] Prior to the resolution of the defendant's post-sentence motions, this Court appointed David Rudenstein, Esquire, to represent the defendant on direct appeal.

1

Court affirmed petitioner's judgments of sentence.[6] On September 14, 2010, petitioner filed a petition for allowance of appeal, which our Supreme Court denied on March 9, 2011.[7]

On November 2, 2011, petitioner filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA).[8] Counsel was appointed[9] on March 16, 2012. Subsequent to Mr. Kauffman's appointment, petitioner filed two *pro se* briefs and, on December 14, 2012, filed a Motion to Relieve Counsel and Notice of Intention to Proceed *Pro Se*. On February 25, 2013, this Court held a Grazier[10] hearing to determine whether petitioner knowingly, intelligently and voluntarily was waiving his right to representation. At the Grazier hearing, petitioner expressly withdrew his request to proceed *pro se*. N.T. 2/25/2013 at 1-6. On April 26, 2013, PCRA counsel filed an amended petition on petitioner's behalf, to which the Commonwealth responded on June 27, 2013. On August 27, 2013, this Court sent petitioner notice pursuant to Pa.R.Crim.P. 907 (907 Notice) of its intent to deny and dismiss his PCRA petition without a hearing. Petitioner did not respond to this Court's 907 Notice; on September 27, 2013, this Court dismissed petitioner's petition. On October 22, 2013, petitioner filed a timely notice of appeal to the Superior Court.

On October 24, 2013, petitioner was ordered to file of record and serve on the trial judge a "Statement of Matters Complained of on Appeal" pursuant to Pa.R.A.P. 1925(b) (1925(b) Statement) no later than 21 days after entry of the order. PCRA counsel failed to comply with this Court's order; however, on December 31, 2013, PCRA counsel applied to the Superior Court to remand the appeal to this Court in order that he might file a timely 1925(b) Statement. On January

---

[6] Commonwealth v. Exum, No. 3153 EDA 2009, slip op. (Pa.Super., Aug. 24, 2010) (memorandum opinion).

[7] Commonwealth v. Exum, No. 508 EAL 2010, slip op. (Pa., Mar. 9, 2011) (memorandum opinion).

[8] 42 Pa.C.S. §§ 9541-9546.

[9] Earl G. Kauffman, Esquire, was appointed to represent petitioner on collateral attack.

[10] Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998).

21, 2014, the Superior Court remanded this matter to this Court for a period of 60 days. The Superior Court directed PCRA counsel to file and serve a 1925(b) Statement within 21 days of the date of the order. PCRA counsel again failed to comply within the allotted time. Thereafter, petitioner filed a *pro se* request for the appointment of substitute counsel. On March 31, 2014, the Superior Court granted petitioner's application for substitute counsel pursuant to Commonwealth v. McDaniels, 785 A.2d 120 (Pa.Super. 2001) (remanding a case for the appointment of substitute counsel where the original attorney was either unwilling or unable to competently represent his client).

On April 1, 2014, this Court removed PCRA counsel and appointed a new attorney to represent petitioner.[11] On May 5, 2014, the Superior Court again remanded this matter to this Court for 60 days with instructions to PCRA counsel to file and serve a 1925(b) Statement within 21 days. PCRA counsel complied with the Superior Court's order.

## FACTS[12]

> On April 25, 2007, at approximately 12:45 p.m., Robert Fuel (victim) and his girlfriend Michelle Davis arrived at Tim's Donut Shop, located at the intersection of North 40th Street and Poplar Street in West Philadelphia. N.T. 5/18/09 at 20-21. Ms. Davis walked inside the shop, at which point she saw [petitioner] and his cousin, Deshawn Harris, sitting on a window ledge near the entrance of the shop. Id. at 25-27. Ms. Davis knew the pair from elementary school, but they did not greet one another. Id. at 25, 64-65. The victim walked into the shop behind Ms. Davis. Id. at 32. Immediately after the victim walked in the door, [petitioner] moved from the ledge, approached the victim and said "Let me talk to you for a minute." Id. at 35. As [petitioner] got up, Mr. Harris left the shop and did not return. N.T. 5/18/09 at 35. Both [petitioner] and the victim turned towards the door, at which point [petitioner] placed his left arm around the victim's left shoulder, pulled a gun out, and shot the victim twice in the head. Id. at 37-38, 88-89.
>
> The victim fell to the floor, and [petitioner] left the shop. Id. at 38-40. Five seconds later, [petitioner] came back into the shop and, from a distance of 15 to 20 feet, shot Ms. Davis three times, twice in the back and once in the side, while looking directly at her the entire time. Id. at 40-43. Before police arrived, the victim's brother, Howard Fuel, and father, Robert Lewis, arrived at the shop. Id. at 47-48. Howard Fuel had been walking down

---

[11] Mitchell S. Strutin, Esquire, was appointed after Mr. Kauffman was relieved.

[12] This Court recites the facts as presented in its January 11, 2009 opinion pursuant to Pa.R.A.P. 1925(a).

3

Poplar Street near the shop when the shooting occurred. N.T. 5/18/09 at 96-104. As he was walking down the street, Howard Fuel heard shots coming from the direction of the shop. Id. at 109-110. He turned and looked at the shop and saw [petitioner] run out the door "tucking a gun," then turn and run back inside the shop. Id. at 110-11, 140. He heard more gunshots, then saw [petitioner] run out of the store and down the street. Id. at 115-16.

The victim was pronounced dead by paramedics at 12:48 p.m. Id. at 87. One bullet, which was determined to be between .40 and .45 caliber, was recovered from the shop. N.T. 5/18/09 at 147. Two bullets of the same caliber were recovered from the victim. Id. at 148-149. All three bullets were lead, and all three bullets had "knurled cannelure." Id. at 152-55. These are both characteristics that are most commonly seen in revolver bullets.[13]

Ms. Davis identified [petitioner] as the shooter to both the first officer at the scene and to the 911 operator on a call placed by the shop's owner. Id. at 46-47, 199-200. [Petitioner] was arrested on May 23, 2007. N.T. 5/19/09 at 24.

## LEGAL ANALYSIS

Petitioner raises seven claims in his 1925(b) Statement, two of which were not advanced during the PCRA litigation before this Court; accordingly, those two claims have been waived.[14]

This Court will address petitioner's five other issues *seriatim*.

1. **Trial counsel was ineffective for advising petitioner to waive his right to a jury trial.**

2. **Trial counsel was ineffective for advising and coercing petitioner to testify at trial.**

3. **Trial counsel was ineffective for failing to litigate a motion to suppress petitioner's statement to police.**

4. **Trial counsel was ineffective for failing to interview and present Deshawn Harris, Kalesha and Moesha Doe as witnesses in petitioner's defense at trial.[15]**

5. **The Commonwealth failed to provide a videotape of the scene at Tim's Donut Shop to petitioner in violation of his rights under the United States and Pennsylvania Constitutions.**

---

[13] The firearm used in this crime was not recovered. N.T. 5/19/09 at 59.

[14] In his pleadings, PCRA counsel did not allege that appellate counsel rendered ineffective assistance of counsel by conceding the defendant's guilt in his appellate brief, nor did he allege that trial and appellate counsel were ineffective for failing to meaningfully challenge the Commonwealth's case at trial or on appeal. Those two claims were raised for the first time in petitioner's 1925(b) Statement and, thus, will not be addressed herein. 1925(b) Statement, 5/10/2014 at ¶¶ 7-8. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

[15] This claim incorporates the fourth and fifth allegations of error as phrased in petitioner's 1925(b) Statement.

4

**1. Trial counsel was ineffective for advising petitioner to waive his right to a jury trial.**

Petitioner's first claim is that trial counsel was ineffective for advising petitioner to waive his right to a jury trial. 1925(b) Statement, 5/10/2014 at ¶ 1. In his amended petition, petitioner alleged that trial counsel pressured petitioner to waive this right "under duress." Memorandum of Law, 4/26/2013, at 4. Petitioner argued that trial counsel "threatened him with the death penalty if he took a jury trial." Id. "While the Commonwealth stated that they would try the case as a death penalty case if petitioner chose a jury trial, it was up to the petitioner's trial counsel to communicate this to the petitioner without coercing the petitioner to give up his Constitutional right." Id. This claim failed for two reasons: first, petitioner's colloquy with this Court demonstrated that he fully understood the essential components of a jury trial, and second, this claim is based on finding that petitioner lied under oath during his colloquy with this Court. For both reasons, petitioner's claim lacked arguable merit and failed.

Although the right to a jury trial in criminal cases is guaranteed by the Sixth Amendment of the United States Constitution and by Article I, § 9 of the Pennsylvania Constitution, it may nevertheless be voluntarily waived. Commonwealth v. Kirkland, 195 A.2d 338, 340 (Pa. 1963). In order for the defendant to knowingly waive his right to a jury trial, he/she must be made aware of three "essential ingredients, which are necessary to understand the significance of the right a defendant is waiving": (1) that the jury would be chosen from members of the community, (2) the verdict would have to be unanimous, (3) and the accused would be permitted to participate in the selection of the jury panel. Commonwealth v. Hayes, 596 A.2d 874, 876 (Pa.Super. 1991).

When one's waiver of his right to a jury trial is collaterally attacked under the guise of ineffective assistance of counsel, it "must be analyzed like any other ineffectiveness claim." Commonwealth v. Mallory, 941 A.2d 686, 698 (Pa. 2008). The analysis must focus on the totality of relevant circumstances, which includes the defendant's experience with jury trials, an explicit written

5

waiver, relevant off-the-record discussions with counsel, as well as an on-the-record colloquy with the court. Commonwealth v. Birdsong, 24 A.3d 319, 339-40 (Pa. 2011). "To prove trial counsel ineffective, each appellant must show that his understanding of the jury waiver was constitutionally impaired by his lawyer's deficient performance, as well as proof that he would have elected a jury but for his lawyer's performance." Mallory, 941 A.2d at 702. In other words, petitioner "must demonstrate he did not understand what he was waiving; that trial counsel caused his failure to understand; and that, but for counsel's ineffectiveness, he would have insisted upon a jury." Birdsong, 24 A.3d at 340.

The totality of the circumstances revealed that petitioner fully understood the essential components of a jury trial, and that it was *his* decision to proceed by bench trial. Not only did petitioner complete a written waiver but, throughout this Court's colloquy, petitioner also demonstrated that he was attuned to the questions put to him, and answered intelligently:

> THE COURT: Good morning, Mr. Exum. I've been advised that you wish to give up your right to a jury trial and to proceed to trial; is that correct?
> PETITIONER: Yes, ma'am.
> THE COURT: I'm going to ask you some questions about it, but the first thing I want to tell you, Mr. Exum, is that there are three and sometimes four decisions that are for you and you alone to make. The first is whether you're going to plead guilty or have a trial. The second one is the one that we're talking about right now, which is if you are having a trial whether it's going to be a trial before the judge sitting alone or where the judge is sitting with a jury but the jury is deciding all of the facts of the case. Where I am sitting alone I would decide both the facts and the law. If you were having a jury trial, the jury would decide the facts. I would still decide the law. Do you understand that?
> PETITIONER: Yes, ma'am.
> THE COURT: And you have an absolute right to have a jury trial. The third decision that would be for you and you alone to make is, regardless of the kind of trial you have, whether you wish to testify or not testify in your case. And the last one is if you are found guilty whether you wish to take an appeal or not. Now, while your attorney can give you excellent advice about what he thinks you should do and why he thinks you should do it, you're the one that has to make the ultimate decision, and that's why we're having this discussion. Because you have to live with the consequences of it. So you don't want to later be saying, well, my attorney shouldn't have told me to do this or I wish I hadn't done that. On many of the other things there are trial strategy, how to question witnesses, a particular defense to take, a certain way to cross-examine some witness, many, many things are trial strategy, and those are usually left by and large to the sound judgment and experience of the trial attorney. But these decisions are considered much more significant and that you alone should make

6

them after consultation with your attorney. **I've had many people come back and say in some kind of an appeal or something, my attorney made me take the stand, or my attorney wouldn't let me testify. Well I always have these discussions, so maybe the person wants to look at it that way, but I always end up having this discussion with people so that you know it's your decision alone to make. Do you understand that?**
PETITIONER: Yes, ma'am.
THE COURT: All right. So we're at the point where you're going to be deciding. And you've reviewed a form, is that correct, this four-page written jury trial waiver colloquy form? You've reviewed that with Mr. Pagano?
PETITIONER: Yes, ma'am.
THE COURT: Did you understand the questions that were on this form?
PETITIONER: Yes, ma'am.
THE COURT: Did you answer them truthfully?
PETITIONER: Yes, ma'am.
THE COURT: And do you have any questions about anything you saw on this form at all or anything Mr. Pagano said to you about your right to a jury trial?
PETITIONER: No, ma'am.
THE COURT: You put your initials at the bottom of the first three pages, and you signed at the top of the fourth page?
PETITIONER: Yes, ma'am.
THE COURT: And you graduated high school?
PETITIONER: Yes, ma'am.
THE COURT: Which one?
PETITIONER: Overbrook Twilight.
THE COURT: Overbrook Twilight?
PETITIONER: Yes ma'am.
THE COURT: And how long ago did you graduate from there?
PETITIONER: 2006.
THE COURT: And you can read, write, and understand the English language?
PETITIONER: Yes, ma'am.
THE COURT: Are you today under the influence of any drugs, alcohol, or medication?
PETITIONER: No, ma'am.
THE COURT: I'm going to explain for you in greater detail so that I'm satisfied that you understand it three aspects of a jury trial that should be covered pretty much in the questions, but I want to be satisfied directly that you understand them as well. The first is that if you are having a jury trial, Mr. Exum, you would be participating with Mr. Pagano in selecting the jury that would hear and decide the facts of this case.[16] The assistant district attorney would also be participating in making that selection. So between questions from both sides and from deciding who seemed acceptable or not acceptable, you would end up with a total of 12 permanent jurors and two alternates who would only serve if one of the 12 couldn't, and that would be the jury that would hear the facts of the case. Do you understand all of that?
PETITIONER: Yes, ma'am.

---

[16] This portion of the colloquy addressed the third requirement from Hayes: that the accused would be permitted to participate in the selection of the jury panel.

THE COURT: You didn't have anything to do with picking me to be the judge that this case got assigned to. It just got assigned here from the calendar judge, Judge Lerner, in a different courtroom where your case was first listed after you went for arraignment. After that's done, like, in a random kind of system and it goes to the different judges that hear homicide cases and I got your case. So you would participate with Mr. Pagano in selecting the jury that would decide the facts of the case. Do you understand that?

PETITIONER: Yes, ma'am.

THE COURT: Another very significant difference or aspect of the jury system is that a jury is considered to be a jury of your peers. The peers would be deciding the facts of the case. And that is so even if they don't look like you, necessarily, or didn't go to Overbrook, maybe didn't graduate high school, some may have, some might not have, some might have different kind of jobs than you've had in your past, et cetera. The reason they're considered to be a jury of your peers is partly based on the way that they're selected. And the way that they're selected is, basically, a random system from the voter registration rolls of the city and county of Philadelphia. And that is that about 500 people come to the Criminal Justice Center every single work day, and they're summoned here to do jury duty and so they are selected at random.[17] They show up. And from that group of 500 people that's downstairs, if we were having your jury trial, a group of 60 people would have been sent up to this courtroom for us to question. And so we would go through the questioning. If it took more than one panel, more than a group – that's called a panel – if it took more than 50 people before you have the 14 people to sit here, the 12 jurors and the two alternates, then we would go onto [sic] the second day or to a third day until we did have a jury that both sides had selected and felt would be a reasonable, fair, impartial jury to hear the facts of the case. And both from the way they're summoned to come to the Criminal Justice Center and the way they come to the courtroom, it's all a random system that's done by a computer. And so because of all of that, they would be considered to be a jury of your peers. Do you understand that?

PETITIONER: Yes, ma'am.

THE COURT: The last significant difference between a jury trial or an aspect of the jury trial that I want you to be aware of is that the 12 jurors that would go back to deliberate after the case was completely finished to see if they thought that the Commonwealth, the district attorney's office, had proved your guilt beyond a reasonable doubt, before there could be a verdict, either a verdict of guilty or a verdict of not guilty as to the charges, every single one of those 12 jurors would have to agree.[18] So you could not be found not guilty if even one person disagreed, just like you could not be found guilty even if one person disagreed. So that is the requirement that the jury's decision be unanimous in criminal cases. Do you understand that?

PETITIONER: Yes, ma'am.

THE COURT: You can see I'm sitting here alone. There's not going to be anybody else to decide with. I will decide at the end of the case whether the District Attorney's Office has proved your guilt beyond a reasonable doubt or not. And if they did, what they proved you guilty of. Do you understand that?

---

[17] This portion of the colloquy addressed the first requirement from Hayes: that the jury would be chosen from members of the community.

[18] This portion of the colloquy addressed the second and final requirement from Hayes: that the verdict would have to be unanimous.

8

PETITIONER: Yes, ma'am.

THE COURT: So if you ended up with a jury that was less than unanimous, that's what's called a hung jury. Then the District Attorney's Office, after I declared a mistrial, could bring you to trial again if they so choose. Do you understand that?

PETITIONER: Yes, ma'am.

THE COURT: And so from what I've just explained to you, in addition to what you reviewed from the four-page written jury trial waiver colloquy form and from the discussions that you've had with your attorney about what you wish to do in this case, at this point **do you wish to give up your right to a jury trial and to proceed before me sitting without a jury, or do you, in fact, wish to have a jury trial?**

PETITIONER: **Without a jury.**

THE COURT: **And did anybody pressure you or force you or threaten you in any way to make that decision and give up your right to a jury trial?**

PETITIONER: **No, ma'am.**

THE COURT: **Did anybody make you any promises if you do give up your right to a jury trial?**

PETITIONER: **No, ma'am.**

THE COURT: Do you understand, Mr. Exum, that regardless of whether it's a jury trial or a judge trial that in all cases where there are criminal charges the entire burden of proving you guilty is upon the assistant district attorney? You don't have any burden whatsoever.

PETITIONER: Yes, ma'am.

THE COURT: And they have to prove your guilt beyond a reasonable doubt whether it's a jury trial or a judge trial. Do you understand that?

PETITIONER: Yes, ma'am.

THE COURT: Do you have any questions at all for me?

PETITIONER: No, ma'am.

THE COURT: Do you also understand just like when we have the colloquy as to whether or not you wish to testify or not testify you are bound by the answers that you're giving me here today? So you can't later say something like I mentioned to you earlier, like, my attorney told me to answer that way because the judge would be mad, it would take longer if she had – people have actually written and said those kind [sic] of things – it would have taken longer, so the judge would have been mad. So if there is anything different to say today, this is the time to do it, this is the moment to do it. And if you want your jury trial, that's what I'm here for. I do trials every single day, every single week that I'm here in the Criminal Justice Center and working. So it's a right that you have. And if you want it, you're entitled to have it. Do you understand that?

PETITIONER: Yes, ma'am.

THE COURT: **Do you understand that you are bound by the answers that you give here today?**

PETITIONER: **Yes, ma'am.**

THE COURT: **Okay. So is there anything else you want to add or change your mind or anything like that?**

PETITIONER: **No, ma'am.**

THE COURT: All right. Is there anything else either attorney wanted to place on the record about the waiver?

MR. PAGANO: No, Your Honor.

ADA McCAFFERTY: No, Your Honor.

9

> THE COURT: Then I am making a finding that Mr. Exum has knowingly, intelligently and voluntarily given up his right to have a jury trial and to proceed to trial before me. Who made the decision, Mr. Exum, for you to give up your right to a jury trial?
> PETITIONER: I did, ma'am.

N.T. 5/18/2009 at 5-17 (emphasis added in both bold and underline).

Petitioner's colloquy revealed that he understood the three "essential ingredients" of a jury trial and that he elected to waive that right of his own volition. As petitioner's understanding of the jury waiver was not "constitutionally impaired by his lawyer's deficient performance," this allegation of ineffective assistance lacked arguable merit.

Additionally, petitioner's claim that trial counsel was ineffective for coercing him to waive his right to a jury trial requires accepting that petitioner lied while under oath. A PCRA petitioner "may not obtain post-conviction relief by claiming that he lied during his waiver colloquy." Commonwealth v. Bishop, 645 A.2d 274, 277 (Pa.Super. 1994); see also Commonwealth v. Pollard, 832 A.2d 517, 523 (Pa.Super. 2003) ("The longstanding rule of Pennsylvania law is that a defendant may not challenge his [colloquy] by asserting that he lied while under oath, even if he avers that counsel induced the lies."). As this allegation of ineffective assistance of counsel is predicated on the notion that petitioner lied during his waiver colloquy, it lacked arguable merit and failed.

## 2. Trial counsel was ineffective for advising and coercing petitioner to testify at trial.

Petitioner's second claim is that trial counsel was ineffective for advising petitioner to testify on his own behalf. 1925(b) Statement, 5/10/2014 at ¶ 2. Petitioner averred that trial counsel "put the petitioner in the untenable position of having to testify on his own behalf, because his own counsel conceded his guilt. Therefore, the petitioner was forced to admit his shooting of decedent, Robert Fuel, which led to his conviction of first degree murder." Memorandum of Law, 4/26/2013, at 5. As petitioner's argument is again rooted in the notion that petitioner lied under oath, this claim lacks arguable merit and fails.

10

The record reveals that petitioner freely chose to testify at trial. When questioned by this Court, petitioner expressly stated that he made the decision to take the stand of his own free will:

> THE COURT: Your attorney has indicated that you do wish to testify; is that correct?
> PETITIONER: Yes, ma'am.
> THE COURT: And so I'm going to ask you some questions again now. Have you taken any drugs, alcohol or medication in the last 12 hours?
> PETITIONER: No, ma'am.
> THE COURT: Can you read and write and understand the English language?
> PETITIONER: Yes, ma'am.
> THE COURT: And so you have discussed with Mr. Pagano your decision about testifying or not testifying?
> PETITIONER: Yes, ma'am.
> THE COURT: And once again, I want you to be clear that this is an absolute right that you have either to not testify and remain silent or to go ahead and testify and present your testimony, and that the decision is yours and yours alone to make. So did anybody pressure you or force you or threaten you in any way to go ahead and testify in this case?
> PETITIONER: No, ma'am.
> THE COURT: **Did anybody promise you anything if you do testify?**
> PETITIONER: **No, ma'am.**
> THE COURT: **Is the decision to testify being made voluntarily and freely by you?**
> PETITIONER: **Yes, ma'am.**
> . . .
> THE COURT: Who made the decision for you to testify?
> PETITIONER: I did, ma'am.
> THE COURT: All right. Then I am making a finding that Mr. Exum has knowingly, intelligently, and voluntarily personally made the decision to take the stand in this case.

N.T. 5/19/2009 at 45-47 (emphasis added).

Under oath, petitioner stated that he was not pressured, coerced or threatened to take the witness stand. He was given multiple opportunities to voice concerns about trial counsel and his decision to testify but, instead, knowingly, intelligently and voluntarily chose to testify. As noted *supra*, petitioner may not obtain post-conviction relief by claiming that he lied during a colloquy with the court. Bishop, 645 A.2d at 277; Pollard, 832 A.2d at 523.

Additionally, petitioner's argument that he was coerced to testify because trial counsel had already conceded his guilt is factually incorrect. Trial counsel's only representation about petitioner's guilt was made during his *closing argument*, where trial counsel stated that petitioner was not guilty of more than murder of the third degree. "Judge, for all the reasons I've stated, for the lack of

11

evidence in this case and the evidence in this case, I would ask this Court to find my client guilty of murder no higher than third degree." N.T. 5/19/2009 at 151-52. As trial counsel made this statement *after* petitioner decided to take the stand, it clearly could not have impacted petitioner's decision to testify.

Petitioner's claim that trial counsel was ineffective for forcing him to testify was without arguable merit and failed.

### 3. Trial counsel was ineffective for failing to litigate a motion to suppress petitioner's statement to police.

Petitioner's third claim is that trial counsel was ineffective for failing to file a motion to suppress petitioner's statement to homicide detectives. 1925(b) Statement, 5/10/2014 at ¶ 3. In his amended petition, petitioner failed to provide any explanation as to how/why his written statement was involuntary and coerced. This Court alerted petitioner to the deficiency in his pleading and advised that he must advance some legal and/or factual argument to support his claim. 907 Notice, 8/29/2013 at 10, *citing* Commonwealth v. Gonzalez, 608 A.2d 52 (Pa.Super. 1992) (rejecting a claim that trial counsel was ineffective for failing to litigate a motion to suppress where the petitioner failed to discuss facts of the case and set forth a legal argument to support the claim that the search and seizure was improper). Petitioner did not respond to this Court's 907 Notice, nor did he specify, in his 1925(b) Statement, the basis upon which he claimed that his statement to detectives should have been suppressed. Without providing any argument as to the foundation of this issue, petitioner's claim lacked arguable merit and failed.

### 4. Trial counsel was ineffective for failing to interview and present Deshawn Harris, Kalesha and Moesha Doe as witnesses in petitioner's defense at trial.

Petitioner's fourth claim is that trial counsel was ineffective for failing to call Deshawn Harris, Kalesha Doe and Moesha Doe to testify on petitioner's behalf at trial. 1925(b) Statement, 5/10/2014 at ¶¶ 4-5. Petitioner alleged that Deshawn Harris "may have been able to testify that

12

petitioner did not have a gun." Memorandum of Law, 4/26/2013, at 6. Additionally, petitioner

claimed that both Kalesha and Moesha Doe knew that Fuel had killed John Maddison, and that Fuel

intended to kill petitioner. Id. at 7. However, as petitioner personally decided not to present any

witnesses, he may not now claim that trial counsel was ineffective for failing to call witnesses to

testify on his behalf; accordingly, the instant claim failed.

"[A] defendant who makes a knowing, voluntary and intelligent decision concerning trial

strategy will not later be heard to complain that trial counsel was ineffective on the basis of that

decision." Commonwealth v. Paddy, 800 A.2d 294, 315 (Pa. 2002).

During this Court's colloquy with petitioner concerning his decision to testify, this Court

questioned petitioner as to whether he wanted to present any evidence – any witnesses – in his

defense:

> THE COURT: And is there anything else that you thought would happen during this trial that is not going to happen?
> PETITIONER: No, ma'am.
> THE COURT: Were there any witnesses that you provided to Mr. Pagano?
> PETITIONER: No, ma'am.
> THE COURT: Anybody that you wanted to have subpoenaed or investigated to bring them in here to testify in your case?
> PETITIONER: No, ma'am.
> THE COURT: You understand, once again, sir, that you will be bound by the answers that you're giving me here today?
> PETITIONER: Yes.

N.T. 5/19/2009 at 46-47.

Petitioner's claim of counsel's ineffectiveness based on a decision to which he knowingly,

intelligently and voluntarily agreed failed for lack of arguable merit.

**5. The Commonwealth failed to provide a videotape of the scene at Tim's Donut Shop to petitioner in violation of his rights under the United States and Pennsylvania Constitutions.**

Petitioner's fifth claim is that the Commonwealth violated petitioner's rights under the

United States and Pennsylvania Constitutions by failing to disclose a videotape of the scene at Tim's

Donut Shop. 1925(b) Statement, 5/10/2014 at ¶ 6. On August 7, 2013, PCRA counsel represented

13

that the videotape at issue did not contain any relevant information, effectively withdrawing this claim:

> THE COURT: So the Brady claim, the video tape, what's on it?
> MR. KAUFFMAN: There's nothing on there that I'm aware of that has any bearing on this particular matter.

N.T. 8/7/2013 at 5.

As PCRA counsel conceded that the purported videotape did not contain exculpatory or impeaching evidence favorable to petitioner, petitioner failed to raise a colorable Brady claim. See Commonwealth v. Ly, 980 A.2d 61, 75-76 (Pa. 2009), quoting Commonwealth v. Gibson, 951 A.2d 1110, 1126 (Pa. 2008) ("[T]o establish a Brady violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant."). Thus, this claim failed.

For all of the foregoing reasons, this Court's decision to deny and dismiss petitioner's PCRA petition should be affirmed.

BY THE COURT:

M. TERESA SARMINA          J.

14